Case 4:23-cv-02952   Document 16   Filed on 06/27/24 in TXSD   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
June 27, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Michelle Bassett, § § § *Plaintiff,* § § v. § § PHH Mortgage Corporation, § § *Defendant.* § | Case No. 4:23-cv-02952 |

## **MEMORANDUM AND RECOMMENDATION**

In this mortgage dispute, Defendant PHH Mortgage Corporation ("PHH") has filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), seeking dismissal of Plaintiff Michelle Bassett's claims. Dkt. 7. The case was referred to the undersigned judge. Dkt. 15. After carefully reviewing the motion, Bassett's response, Dkt. 10, PHH's reply, Dkt. 13, and the applicable law, it is recommended that PHH's motion for judgment on the pleadings (Dkt. 7) be granted.

## **Background**

This foreclosure dispute concerns property located at 3227 Ewing Street, Houston, TX 77004 (the "Property"). Dkt. 1-1 at 13. Bassett purchased the Property in 2006, executing a promissory note and deed of trust in favor of Harbourton Mortgage Investment Corp. *Id.* at 7; *see also* Dkt. 7-1 at 2 (DX-A,

promissory note); Dkt. 7-2 at 2 (DX-B, deed of trust). The deed of trust was recorded in the real property records of Harris County, Texas, where the Property is located.[1] *See* Dkt. 7-1 at 12; Dkt. 7-2 at 2. The note and deed of trust were subsequently assigned to Ocwen Loan Servicing, LLC and, ultimately, to PHH. Dkt. 1-1 at 7.

Bassett entered a loan modification program in September 2014, and again in November 2018 after Hurricane Harvey. *See id.* She timely made payments under these programs. *Id.* But after the loan's transfer to PHH in May 2019, Bassett began to experience "change[s] in her escrow account and monthly mortgage payments," prompting her to retain counsel to reconcile the issues. *Id.* In 2020, Bassett sought judicial intervention, but the parties jointly dismissed the suit during the COVID-19 pandemic. *Id.* at 8.

Around December 2022, PHH approved Bassett for its mortgage assistance program. *Id.* As part of this program, Basset entered a trial period plan ("TPP") agreement that required her to make monthly payments of $3,439.76 by the first day of February, March, and April 2023. *Id.; see also id.* at 20 (PX-A, TPP agreement). As the agreement states, successful completion of her payment obligations under the TPP would entitle Bassett to a

---

[1] The Court takes judicial notice of the deed of trust and promissory note, as "unrebutted" public records. *See Smith v. MTGLQ Invs., L.P.*, 851 F. App'x 514 (5th Cir. 2021) (per curiam).

2

permanent modification of her loan. *See id.* at 21. On the other hand, the agreement warned Bassett explicitly that PHH would revoke the offer if she failed to timely make the first of those TPP payments. *See id.* In that instance, "foreclosure proceedings may continue and a foreclosure sale may occur." *Id.*

Although Bassett claimed she made those payments, *id.* at 8, 19, the documents she attached as proof of "the three (3) months of payments" reflect that she submitted payments—not in February or March—but in April, May, and June 2023. *See id.* at 23-26 (April 30, 2023); *id.* at 27-29 (April 1, 2023); *id.* at 30 (May 1, 2023); *id.* at 22, 31 (June 14, 2023). Bassett asserts that she encountered processing errors that led PHH to reject her payments because sums she transferred through PHH's authorized payment portal, Money Gram, were split rather than transferred in a single lump sum. *See id.* at 8-9. But she also attached and incorporated by reference several documents indicating that those payments were rejected because the amount she submitted failed to "cure [her] default." *See id.* at 8 (incorporating PX-C); *id.* at 32-33 (PX-C, rejecting April and May payments because "[a]mount does not cure default").

PHH scheduled the Property for a foreclosure sale on July 5, 2023. *Id.* at 9. Bassett responded by filing suit in state court on July 3, 2023. *Id.* at 5. The state court granted Bassett's application for a temporary restraining order to halt the foreclosure sale. *Id.* at 40-41. The parties agree that no foreclosure sale has occurred. *See id.* at 11 (Bassett); *see also* Dkt. 7 at 13 (PHH).

In addition to injunctive and declaratory relief, Bassett asserts claims for breach of contract, breach of the duty of good faith and fair dealing, and under the Real Estate Settlement Procedures Act ("REPSA"), and Section 51.002 of the Texas Property Code. *See id.* at 5-15. On August 10, 2023, PHH removed the case to this Court. Dkt. 1. PHH then moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). Dkt. 7. Bassett responded, Dkt. 10, and PHH replied, Dkt. 13. The motion is ripe for resolution.

## **Legal standard**

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "The standard for deciding a Rule 12(c) motion is the same standard used for deciding motions to dismiss pursuant to Rule 12(b)(6)." *Q Clothier New Orleans, L.L.C. v. Twin City Fire Ins. Co.*, 29 F.4th 252, 256 (5th Cir. 2022).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "the complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (footnotes omitted).

When resolving a Rule 12(c) motion, a court can consider: "(a) documents attached to the complaint or identified as central to the claims made therein; (b) documents attached to the motion to dismiss that are referenced in the complaint; and (c) documents that are subject to judicial notice as public record." *Sparks v. Texas Dep't of Transp.*, 144 F. Supp. 3d 902, 903 (S.D. Tex. 2015) (citing *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

## Analysis

PHH seeks judgment on the pleadings for all of Bassett's claims: breach of contract, breach of the duty of good faith and fair dealing, violations of the Real Estate Settlement Procedures Act ("RESPA") and Texas Property Code, and declaratory and injunctive relief. *See* Dkt. 7. As explained below, none of Bassett's allegations state a plausible claim for relief.

### I. Bassett's breach-of-contract claim is barred because she failed to perform her obligations under the TPP.

PHH's central contention is that Bassett did not make her monthly payments as required under the TPP. *See* Dkt. 7 at 4-6. From there, PHH asserts that Bassett is barred from claiming that PHH breached the TPP. *Id.*

In response, Bassett maintains that her payments were rejected, and PHH failed to assist her attempts to rectify the issue. *See* Dkt. 10 at 1-2. But the documents Bassett attached and incorporated in her pleading, ostensibly to support her breach-of-contract claim, confirm that she failed to fulfill her own contractual obligations.

To prevail on her claim, Bassett must show, among other things, that she tendered performance of her own obligations under the contract. This is because "a party to a contract who is [herself] in default cannot maintain a suit for its breach." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) (quoting *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990)).

The only contracts identified in Bassett's pleading that PHH allegedly breached are the TPP and, relatedly, the promissory note. *See* Dkt. 1-1 at 8-9. As its moniker indicates, the TPP (Trial Period Plan) temporarily modified Bassett's payment obligations under the promissory note. *See id.* at 20; Dkt. 7-1 at 2-5. Under the TPP, Bassett was required to make three payments of $3,439.76 by the first day of February, March, and April 2023. Dkt. 1-1 at 20. So long as the Property was clear of other encumbrances, Bassett's timely completion of those payments would entitle her to a permanent loan modification. *See id.* at 21. If she missed even a single payment, however, the TPP would "be revoked and foreclosure proceedings may continue and a foreclosure sale may occur." *Id.*

6

Bassett asserts that she "made the requested payments" and she "initiated her performance by making payments in February, 2023." Dkt. 1-1 at 8-9; *see also id.* at 19 (Bassett's affidavit asserting "I made the required payments between February, 2023 through April, 2023"). She also maintains that PHH refused her payments because they were broken up in smaller tranches, failed to help her address the issue, and then improperly sought to foreclose. *See id.* at 8-9. But she submitted and explicitly incorporated certain exhibits that show a very different chain of events. *See id.* at 8 (incorporating Dkt. 1-1 at 22-31 (PX-B), 32-34 (PX-C)). "In case of a conflict between the allegations in a complaint and the exhibits attached to the complaint, the exhibits control." *Stockwell v. Kanan*, 442 F. App'x 911, 913 (5th Cir. 2011) (per curiam) (citing *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004); *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940)).

As PHH correctly contends, Bassett's own exhibits show that she missed payments in February and March 2023. *See* Dkt. 7 at 5. Bassett's payment records, which purport to show her "three (3) months of payments," *see* Dkt. 1-1 at 8, reflect that she made those payments *only* in April, May, and June 2023, *see id.* at 23-31. This is reinforced by PHH's letters stating that Bassett's April 30, 2023 and May 6, 2023 payments were rejected, not because they were split into multiple sums, as she maintains, *see* Dkt. 1-1 at 8-9, but because the

7

amounts submitted did not cure her *prior* default, *i.e.*, the missed TPP payments in February and March 2023. *See* Dkt. 1-1 at 32-34 (rejecting payment because "[a]mount does not cure default"). Thus, the documents Bassett chose to incorporate in her pleading reflect that she failed to satisfy her payment obligations under the TPP. For this reason alone, Bassett has failed to state a claim for breach of contract.

## II. PHH did not owe Bassett a duty of good faith and fair dealing.

Bassett did not respond to PHH's arguments for dismissal of her claim for breach of the common law duty of food faith and fair dealing. *Compare* Dkt. 7 at 6, *with* Dkt. 10 at 2. Regardless, PHH is correct that Texas does not recognize a common law duty in this context.

"The duty of good faith and fair dealing does not exist in Texas unless intentionally created by express language in a contract or unless a special relationship of trust and confidence exists between the parties to the contract." *Lovell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298, 302 (Tex. App.—Amarillo 1988, writ denied) (citing *Arnold v. Nat'l Cnty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987)). Bassett has not articulated any basis for imposing such a duty on PHH. *See* Dkt. 1-1 at 10. Instead, "[t]he relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith." *Chapa v. Chase Home Fin. LLC*, 2010 WL 5186785, at *6 (S.D. Tex. Dec. 15, 2010) (internal

8

quotation marks omitted). Bassett's claim for breach of the duty of good faith and fair dealing should be dismissed.

### III. Bassett failed to state a plausible claim under RESPA.

Bassett alleges myriad violations of RESPA, 12 C.F.R. §§ 2601, *et seq.*, listing five provisions without factual particulars: two statutes,[2] 12 U.S.C. §§ 2605(f) and 2614, and three regulations, 12 C.F.R. §§ 1024.35, 1024.39, and 1024.41. Dkt. 1-1 at 10. Bassett has not pleaded a basis for recovery under any of them.

Sections 2605(f) and 2614 do not create causes of action. Section 2605(f) lists types of damages and costs available for violations of *other* RESPA requirements. *See* 12 U.S.C. § 2605(f). And Section 2614 specifies the proper venue and the limitations period for asserting violations of certain RESPA provisions. *See id.* § 2614. Indeed, Bassett explained that she cited these Sections to show that her suit was properly and timely filed. *See* Dkt. 10 at 5-6. As PHH has not challenged venue or limitations, Sections 2605(f) and 2614 have no bearing on this suit.

Next, PHH argues that Sections 1024.35 and 1024.39 do not confer a private right of action. *See* Dkt. 7 at 9-10. Numerous decisions from this Court

---

[2] The pleadings reference Section 6(f), which is codified at 12 U.S.C. § 2605(f). *See Hymes v. Amcap Mortg., Ltd.*, 2020 WL 7658127, at *6 (S.D. Tex. Nov. 17, 2020), *adopted by* 2021 WL 65485 (S.D. Tex. Jan. 7, 2021).

support PHH's position, but the Fifth Circuit has yet to resolve the issue. *Compare Gresham v. Wells Fargo Bank, N.A.*, 642 F. App'x 355, 359 (5th Cir. 2016) (per curiam) (expressing doubt about a private right of action under Section 1024.39, but deciding the case on other grounds), *with Ghattas v. Caliber Home Loans, Inc.*, 2021 WL 536462, at *4 (S.D. Tex. Jan. 25, 2021) (no private right action of action under Section 1024.35), *adopted by* 2021 WL 535575 (S.D. Tex. Feb. 12, 2021), *and Solis v. U.S. Bank, N.A.*, 2017 WL 4479957, at *3 (S.D. Tex. June 23, 2017) (no private right of action under Sections 1024.35 and 1024.39, but further concluding that plaintiff failed to allege sufficient facts), *aff'd*, 726 F. App'x 221 (5th Cir. 2018) (per curiam). Even assuming that Bassett could bring a claim under these RESPA provisions, and as reflected below, she has not adequately pleaded violations of Sections 1024.35 or 1024.39.

**A. Bassett has not alleged that she provided a written notice of error under Section 1024.35, nor has she pleaded cognizable damages.**

Apart from disputing whether Section 1024.35 confers a private right of action, PHH argues that Bassett failed to plead sufficient facts to support this claim. Dkt. 7 at 9-10. "Section 1024.35 outlines the error resolution procedures for when a borrower notifies the loan servicer about certain errors involving the mortgage loan." *Hodge v. Bank of N.Y. Mellon as Tr.*, 2020 WL 1035243, at *5 (N.D. Tex. Feb. 12, 2020) (footnote omitted). "RESPA's error reporting

10

procedures are only applicable when the borrower sends a notice of error to the servicer in the form and manner provided under § 1024.35." *Id.* at \*7 (citing 12 C.F.R. § 1024.35(a)). In particular, the borrower must provide "written notice ... that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a). "A servicer is under no obligation to respond to a notice of error that does not comply with the requirements of § 1024.35(a)." *Hodge*, 2020 WL 1035243, at \*7.

Bassett asserts that a technical error in PHH's payment portal prevented it from receiving some of her payments under the TPP.³ *See* Dkt. 1-1 at 8. She complains that, despite notifying her designated relationship manager about the error, PHH nonetheless scheduled a foreclosure sale on July 5, 2023. *Id.* at 9; *see also* Dkt. 10 at 3.

PHH contends, however, that Bassett does not allege she submitted a notice of error sufficient to trigger PHH's response obligations. *See* Dkt. 7 at 9; Dkt. 13 at 3. In particular, Bassett fails to assert that she sent a *written* notice to PHH, much less a written notice that contains all the information Section 1024.35 requires. She has therefore failed to state a claim under Section 1024.35. *See Solis*, 2017 WL 4479957, at \*3 (an "inquir[y] about discrepancies"

---

³ As concluded *supra*, Part I, Bassett's exhibits refute this contention.

11

did not amount to a written notice of error under Section 1024.35); *see also, e.g., Wilson v. Deutsche Bank Tr. Co. Ams. as Tr. for Residential Accredit Loans, Inc., Mortg. Asset-Backed Pass-Through Certificates, Series 2006-QS5*, 2020 WL 570915, at *6 (N.D. Tex. Feb. 5, 2020) (dismissing a Section 1024.35 claim absent allegations that plaintiff's request "was in writing or … contained any of the required information").

Moreover, Bassett's own exhibits negate any cognizable damages resulting from any alleged failure to respond to a notice of error. Those documents confirm that PHH did not reject her payments due to problems with the payment portal. *See supra* Part I. Instead, Bassett had already defaulted on her payment obligations in February and March 2023 when she attempted to transmit the belated payments in April and onward. And, again, Bassett's default on her TPP payment obligations obviated her right to a permanent loan modification and entitled PHH to foreclose. *See* Dkt. 1-1 at 21. The absence of recoverable damages further negates her Section 1024.35 claim.

### B. PHH did not violate Section 1024.39 by failing to inform Bassett about loss mitigation options.

Section 1024.39 "requires the servicer of loan to 'make good faith efforts to … inform such borrower about the availability of loss mitigation options if appropriate.'" *Solis*, 2017 WL 4479957, at *4 (quoting 12 C.F.R. § 1024.39(a)). Bassett alleges that PHH did not make a good faith effort to inform her of loss

mitigation options after her (untimely) payments were made. *See* Dkt., 1-1 at 10; Dkt. 10 at 5-6. PHH contends that it fulfilled its obligations, as the TPP was itself a loss mitigation option. The Court agrees with PHH.

It is undisputed that Bassett received loan modifications in September 2014 and November 2018. *See* Dkt 1-1 at 7; Dkt. 7 at 2. And in 2023, Bassett entered PHH's mortgage assistance program through the TPP. Dkt. 1-1 at 8. Bassett has not challenged the notice procedures for those loss mitigation options. Instead, she impliedly asserts that she was due *another* notice about the availability of loss mitigation after PHH determined that she had defaulted under the TPP agreement. *See* Dkt. 10 at 5.

Bassett cites no authority supporting the theory that PHH owed her another round of loss mitigation notices after she failed to satisfy her loss-mitigation obligations under the TPP. Indeed, "RESPA only requires a servicer to complete a single loss mitigation procedure for a borrower." *Olivo v. Caliber Home Loans, Inc.*, 2016 WL 7734609, at *2 (S.D. Tex. June 8, 2016) (citing 12 C.F.R. § 1024.41(i)), *adopted by* 2016 WL 7734610 (S.D. Tex. June 29, 2016). Bassett's RESPA claim under Section 1024.39 is untenable.

### C. Section 1024.41 did not apply to PHH's actions, and no violation was adequately pleaded.

Section 1024.41(g), known as Regulation X, prohibits mortgagors from dual tracking. *See* 12 C.F.R. § 1024.41(g). "Dual tracking is the term given to

situations in which the lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options." *Gresham*, 642 F. App'x at 359 (citing 12 C.F.R. § 1024.41).[4] But this restriction "appl[ies] only to a borrower's *first* loss mitigation application." *Wentzell v. JPMorgan Chase Bank, Nat'l Ass'n*, 627 F. App'x 314, 318 n.4 (5th Cir. 2015) (per curiam) (emphasis added); *see also* 12 C.F.R. § 1024.41(i). As explained above, Bassett had already sought and obtained a loss mitigation alternative through the TPP. Yet her complaints here concern what happened after PHH determined that she had defaulted on her loss-mitigation obligations under the TPP. At that point, the prohibition against dual tracking did not apply.

In addition, "Section 1024.41(g) only applies where 'a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale.'" *Gresham.*, 642 F. App'x at 359 (quoting 12 C.F.R. § 1024.41(c)). In *Gresham*, the plaintiff "did not plead, nor [wa]s there any evidence, that he submitted a complete loss mitigation application more than 37 days before the April 1, 2014 foreclosure sale." *Id.* As such he "failed to put forth any factual content to support [his] claim" and the Fifth Circuit affirmed dismissal of his Section 1024.41 claim. *Id.*

---

[4] Unlike the other RESPA provisions at issue, courts agree that Section 1024.41 "expressly provides for a private right of action." *See Gresham*, 642 F. App'x at 359 (citing 12 C.F.R. § 1024.41(a)).

14

The reasoning in *Gresham* applies equally here. Bassett does not assert that she submitted a loss mitigation application after the payment issues arose, much less that she did so 37 days before the foreclosure sale was scheduled to occur on July 5, 2023. *See* Dkt. 1-1 at 5-15. Without a loss mitigation application during the contested period, Bassett cannot state a Section 1024.41 claim. *See Olivo*, 2016 WL 7734609, at *2 (a completed loss mitigation application is a "regulatory prerequisite" to Section 1024.41 claims).

In sum, Bassett has not stated plausible claims under any of the RESPA provisions she cites. Those claims should be dismissed.

## IV. Bassett has not stated a cognizable claim under Texas Property Code § 51.002.

Bassett alleges that PHH did not send a notice of default before foreclosing on the Property, violating Section 51.002(d) of the Texas Property Code. *See* Dkt. 1-1 at 11. That provision requires PHH to provide "written notice by certified mail stating that the debtor is in default under the deed of trust ... and giving the debtor at least 20 days to cure the default before notice of sale can be given." Tex. Prop. Code §51.002(d).

PHH first argues that Section 51.002 does not create an independent cause of action. Dkt. 7 at 12. While some district courts have taken that position, others disagree. *See Rucker v. Bank of Am., N.A.*, 806 F.3d 828, 830 & n.2 (5th Cir. 2015) (marshaling various district court decisions). No binding

15

authority addresses the issue. *See id.* (declining to resolve it); *MattSnow Props., LLC v. First Nat'l Bank of McGregor*, 2023 WL 8008354, at *4 n.7 (Tex. App.—Texarkana Nov. 20, 2023, no pet.) (recognizing the lack of Texas Supreme Court and Fifth Circuit precedent, quoting *Garza v. Wells Fargo Bank, N.A.*, 632 F. App'x 222, 224 (5th Cir. 2016)).

This Court need not address the issue either because PHH's second argument is correct. *See* Dkt. 7 at 13. Bassett cannot bring a Section 51.002(d) claim, as no foreclosure sale has occurred. "[C]laims for violating [Section 51.002's] notice requirements are cognizable only after a foreclosure." *Kew v. Bank of Am., N.A.*, 2012 WL 1414978, at *6 (S.D. Tex. Apr. 23, 2012) (collecting authorities); *see also, e.g.*, *Perez v. Midfirst Bank*, 2019 WL 6687665, at *3 (S.D. Tex. Dec. 6, 2019) ("[T]here is no claim under Section 51.002(d) where no foreclosure has taken place."). Although PHH initiated foreclosure proceedings, the foreclosure sale did not transpire. *See* Dkt. 1-1 at 11; Dkt. 7 at 13. Bassett's claim under Section 51.002 therefore fails.

## V. Bassett's requests for injunctive and declaratory relief and attorneys' fees are barred.

Finally, Bassett's remaining claims for injunctive and declaratory relief cannot survive dismissal of her other causes of action. *See Reyes v. N. Tex. Tollway Auth.*, 861 F.3d 558, 565 n.9 (5th Cir. 2017) (requests for declaratory relief "must be supported by some underlying cause of action"); *Torres-Aponte*

*v. JP Morgan Chase Bank, N.A.*, 639 F. App'x 272, 274 (5th Cir. 2016) (per curiam) ("Injunctive relief is a remedy and not an independent cause of action under Texas law."). Without a viable claim, Bassett cannot recover attorneys' fees either. *See, e.g.*, *Futrell v. JPMorgan Chase Bank, NA*, 2019 WL 3948222, at *9 (N.D. Tex. July 29, 2019) (dismissing request for attorneys' fees in mortgage dispute where all claims were dismissed), *adopted by* 2019 WL 3947713 (N.D. Tex. Aug. 21, 2019). As explained above, Bassett has not plausibly alleged any underlying cause of action. PHH is thus entitled to dismissal of Bassett's claims for injunctive and declaratory relief, as well as for attorneys' fees.

Notably, too, Bassett has neither sought leave to amend nor explained why amendment would not be futile. To the contrary, her claims are legally barred. Accordingly, the proper remedy is to dismiss her claims without leave to amend.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendant PHH Mortgage Corporation's motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) (Dkt. 7) be **GRANTED**, and all of Plaintiff Michelle Bassett's claims be **DISMISSED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed.**

R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on June 27, 2024, at Houston, Texas.

*[signature]*
Yvonne Y. Ho
United States Magistrate Judge